**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| LESLIE PRUITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CA 18-0099-MU |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Leslie Pruitt brings this action, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social

Security ("the Commissioner") denying her claim for a period of disability, Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), based on

disability. The parties have consented to the exercise of jurisdiction by the Magistrate

Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 21 ("In

accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in

this case consent to have a United States Magistrate Judge conduct any and all

proceedings in this case, … order the entry of a final judgment, and conduct all post-

judgment proceedings.")). *See also* Doc. 22. Upon consideration of the administrative

record, Pruitt's brief, the Commissioner's brief, and all other documents of record, it is

determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit
Court of Appeals. *See* Doc. 21 ("An appeal from a judgment entered by a Magistrate
Judge shall be taken directly to the United States Court of Appeals for the judicial circuit
in the same manner as an appeal from any other judgment of this district court.").

# I.  PROCEDURAL HISTORY

Pruitt applied for a period of disability and DIB, under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 423 - 425, and for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on April 9, 2015, alleging disability beginning on February 22, 2015. (Tr. 148-54; 157-65). Her application was denied at the initial level of administrative review on August 10, 2015. (Tr. 73-82). On September 10, 2015, Pruitt requested a hearing by an Administrative Law Judge (ALJ). (Tr. 85-86). After a hearing was held on February 24, 2017, the ALJ issued an unfavorable decision finding that Pruitt was not under a disability from the date the application was filed through the date of the decision, April 26, 2017. (Tr.10-20). Pruitt appealed the ALJ's decision to the Appeals Council, and, on January 11, 2018, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

After exhausting her administrative remedies, Pruitt sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on July 3, 2018. (Docs. 9, 10). Both parties filed briefs setting forth their respective positions. (Docs. 11, 16). Oral argument was held before the undersigned Magistrate Judge on February 5, 2019. (Doc. 23). The case is now ripe for decision.

# II.  CLAIM ON APPEAL

Pruitt raises one claim of alleged error made by the ALJ: whether the ALJ erred in relying upon the Medical-Vocational Rules given the ALJ's finding that she had a severe impairment of epilepsy. (Doc. 11 at p. 2).

# III. BACKGROUND FACTS

Pruitt was born on May 22, 1974 and was 42 years old at the time the ALJ issued his opinion denying her benefits. (Tr. 33). Pruitt alleged disability due to asthma, grand mal seizures, heart murmur, and stomach issues. (Tr. 178). She completed the 10th grade of school and was in special education classes. (Tr. 34, 181). She reported that her ability to read is limited. (*Id.*). She has never had a driver's license. (*Id.*). She has had past employment as a food preparer at several fast food restaurants. (Tr. 39). Pruitt lives in a mobile home with her young adult son. (Tr. 37). She can do light chores around the house, do laundry, and grocery shop. (Tr. 39-40). She can bathe, dress, and groom herself. (Tr. 39). She does not cook because the food does not smell right to her. (Tr. 40). She can pay bills, but she does not have a bank or savings account and cannot count change back very well. (Tr. 200).

After conducting a hearing, the ALJ found that Pruitt had the following severe impairments: epilepsy, anemia, and GERD. (Tr. 15). He further determined that none of these impairments or combination of impairments met or equaled a listing. (Tr. 15-16). The ALJ assessed Pruitt's residual functional capacity ("RFC") and found that she could perform the full range of sedentary work. (Tr. 16-19). Taking into consideration her RFC, age, education, and work experience, he concluded that a finding of "not disabled" was directed by Medical Vocational Rule 201.25. (Tr. 20). Accordingly, the ALJ concluded that Pruitt was not entitled to benefits. (*Id.*).

## IV. ALJ'S DECISION

The ALJ made the following findings in his April 26, 2017 decision that are relevant to the claim on appeal:

The claimant also has a history of epilepsy/convulsions, but the evidence shows she has been non-compliant with treatment and medications. In March 2014, the claimant's husband reported to hospital staff that the claimant was drinking a lot, mostly liquor, and she did not take her seizure medication (Exhibit B1F, p. 39). In May 2015, the claimant presented to the emergency room following a seizure. She reportedly had diffuse shaking but no urinary incontinence or biting of the tongue. She reported that she was not following with a neurologist (Exhibit B5F, p. 5). In July 2015, the claimant told Dr. Dixon, the consultative examiner, that every time she has a seizure it is because she has run out of her medication and cannot afford prescription medications from time to time. Dr. Dixon diagnosed her with a seizure disorder with medication noncompliance (Exhibit B6F). Even the claimant's own treating physician, Dr. Louis Berec, noted at Exhibit B8F that the claimant was taking medications irregularly and was not compliant with her medications. The undersigned also notes that during an emergency room visit in July 2016, the claimant's seizures were attributed to a change in alcohol use, and she was diagnosed with alcohol abuse along and seizure disorder. She also left against medical advise [sic] prior to completion of treatment for her seizures with intravenous Dilantin (Exhibit B12F, pp. 7-8). The evidence also shows that the claimant's seizures are not that frequent. In May 2015, her seizures were reportedly stable (Exhibit B9F, p. 10). In February 2016, she reported no recent seizures and her seizures/convulsions were said to be under fair control. (Exhibit B11F, pp. 6 and 9). The next mention of seizures was in July 2016 when the seizures were said to be possibly due to change in alcohol use (Exhibit B12F, pp. 7-8). She also admitted at the February 24, 2017 hearing that her last seizure had been in July 2016, seven months earlier.

Social Security Regulations provides that, "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work" (20 CFR 404.1530(a). The Regulations further state that when an individual does not follow prescribed treatment without a good reason, the individual will not be found disabled. Acceptable reasons for failure to follow prescribed

treatment include 1) the specific medical treatment is contrary to the established teaching and tenets of the individual's religion, 2) the prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in severe loss of vision and is not subject to improvement through treatment, 3) surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment, 4) the treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky to the individual, or 5) the treatment involves amputation of an extremity, or a major part of an extremity (20 CFR 404.1530(b) and (c).

There is no doubt that the claimant suffers from severe conditions and has been repeatedly hospitalized for care. Unfortunately, the medical evidence of record is riddled with reference to the claimant's problems being secondary to non-compliance. In fact, the claimant even admitted to Dr. Dixon that her seizures have occurred when she was not taking her medications.

The claimant also testified at the hearing that she sometimes could not afford her medications. However, she later stated that she goes to the clinic for medical treatment due to a lack of insurance and she gets her medications at the clinic. Thus, she should have no problems obtaining her medications if she receives regular medical treatment. She also continues to smoke cigarettes and drinks alcohol (per Exhibit B12F, p. 8), and the money spent on these items could be spent on her medications and/or treatment.

It is also significant to note that the claimant continues to perform a wide range of daily activities despite her stomach issues, anemia and seizures. She reported at Exhibit B5E and in her testimony at the hearing that she performs personal care activities such as bathing, dressing and grooming, she does laundry, she sweeps, she grocery shops, and she goes to her mother's house.

Despite all of the above, the undersigned has given the claimant every benefit of the doubt and finds that, due to her seizures, anemia, and GERD, the claimant is limited to sedentary work.

* * *

Based on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.25.

(Tr. 15, 16, 18-19, 20).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42

U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable

"to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be severe, making the

claimant unable to do the claimant's previous work or any other substantial gainful

activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§

404.1505-11.  "Substantial gainful activity means work that … [i]nvolves doing

significant and productive physical or mental duties [that] [i]s done (or intended) for pay

or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in

determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not,
> whether the claimant has a severe impairment; (3) if so, whether the severe
> impairment meets or equals an impairment in the Listing of Impairment in the
> regulations; (4) if not, whether the claimant has the RFC to perform her past
> relevant work; and (5) if not, whether, in light of the claimant's RFC, age,
> education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam)

(citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,*

357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden

of proving the first four steps, and if the claimant does so, the burden shifts to the

Commissioner to prove the fifth step. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999).

The reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel,* 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986).

In this case, Pruitt argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly take into account non-exertional impairments caused by her epilepsy and, if he had, he would not have concluded that she could perform the full range of sedentary work and, therefore, would not have exclusively relied upon the grids in finding her not disabled. (Doc. 11 at pp. 2-3). The Commissioner acknowledges that "one or more non-exertional impairments would normally be reason to require use of vocational expert ("VE") testimony or the

equivalent, as opposed to the ALJ relying solely on the Grids," but she contends that Pruitt's argument is not applicable here because substantial evidence supported the ALJ's finding that Pruitt does not experience seizures and thus has no non-exertional impairments related to her diagnosis of epilepsy when she is compliant with prescribed treatment. (Doc. 16 at p. 7). As set forth above, *supra* at p. 4-5, the ALJ reviewed Pruitt's records and noted that she had reported to her doctor that the three seizures she had experienced in 2015 were because she was out of her medication. (Tr. 18, 489). She admitted at the hearing before the ALJ that she does not suffer seizures when she is on her medication. (Tr. 42). Although Pruitt told her doctor that she was not always able to afford her medications, the record reflected that she was able to get her medication through Dr. Berec's office and that she elected to spend money on cigarettes and alcohol that could have been spent on her medications. (Tr. 17-19, 42, 489, 549). The ALJ also noted that the last seizure Pruitt had was possibly caused by her alcohol use. (Tr. 18, 548, 549-50).

Having reviewed and considered the ALJ's decision, Pruitt's medical records, the hearing testimony, and the written and oral arguments made by each party, the Court finds that substantial evidence supports the ALJ's decision that Pruitt is able to perform the full range of sedentary work. Therefore, the Court concludes that it was not contrary to law for the ALJ to have relied solely upon the Medical-Vocational Guidelines.

## CONCLUSION

As noted above, it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. It is well-established that this Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence

and based on proper legal standards. The Court finds that the ALJ's Decision that Pruitt is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

      **DONE** and **ORDERED** this the **20th** day of **June, 2019**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**